ELIZABETH COADY, Plaintiff-Appellant, v. HARPO, INC., Defendant-Appellee.

First District (5th Division)   No. 1—99—0481

Opinion filed September 30, 1999.

Douglas K. Morrison, of Morrison & Mix, of Chicago, for appellant.

William L. Becker, Joseph M. Gagliardo, Jeffrey S. Fowler, and Alejandro Caffarelli, all of Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Elizabeth Coady appeals the dismissal of her cause of action seeking a declaratory judgment that a confidentiality policy established by defendant Harpo, Inc., was unenforceable against plaintiff, a former employee of defendant.

This appeal raises three issues as to whether (1) the proper forum to consider the dispute is the court or an arbitration panel; (2) plaintiff waived any challenge to the validity of a confidentiality agreement executed in 1995, as distinguished from the confidentiality agreement which is included in defendant's 1996 employee manual; and (3) the confidentiality agreement is an enforceable restrictive covenant. We find that the court is the proper forum to consider the validity of the contested agreement, that waiver does not apply, and that the confidentiality agreement is enforceable. Accordingly, we affirm the trial court's decision to dismiss plaintiff's cause of action and to compel arbitration as to the operation of the agreement.

On July 2, 1998, plaintiff filed a two-count complaint against defendant. Count I, the only count on appeal, sought a declaratory judgment that a restrictive covenant is unenforceable against plaintiff. Count II alleged a breach of contract claim, which subsequently was voluntarily dismissed by the trial court's order dated February 1, 1999.

In her complaint, plaintiff stated that from November 1993 to March 1998 she was employed by defendant in a number of positions, most recently as a "senior associate producer" for defendant's television series, "The Oprah Winfrey Show." Plaintiff alleged that for some time prior to March 26, 1998, defendant engaged in a course of conduct designed to force plaintiff from her employment and defendant's treatment of plaintiff became so intolerable as to amount to constructive termination. On March 26, 1998, plaintiff notified defendant by letter from her attorney that she resigned effectively immediately.

Paragraph 16 of plaintiff's complaint states that she, "a trained journalist, intends to write or otherwise report about her experiences as an employee of defendant, matters of legitimate public interest and concern." Plaintiff further alleged that her intention to exercise her rights of free speech and free press was not prohibited by a confidentiality policy, which was entitled "Business Ethics, Objectivity, and Confidentiality Policy" and contained in defendant's September 1996 employee manual. Plaintiff maintained that the purported restrictions of the confidentiality policy, as stated in the employee manual, were unenforceable for one or more of eight enumerated reasons.

In a letter dated April 24, 1998, and attached to plaintiff's complaint, defendant "reminded" plaintiff that she had signed a document entitled "Business Ethics, Objectivity and Confidentiality Policy" on March 12, 1995, and provided her a copy of the agreement in the letter. Defendant's letter further stated that in the March 12, 1995, agreement, plaintiff "agreed (among other things) to keep confidential, during her employment and thereafter, all information about the Company, Ms. Winfrey, her private life, and Harpo's business activities which she acquired during or by virtue of her employment with Harpo." Defendant further stated that it intended to enforce and ensure compliance with the confidentiality agreement.

On September 10, 1998, defendant filed a motion to dismiss the complaint pursuant to sections 2—615 and 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a)(9) (West 1998)), for failing to state a claim upon which relief might be granted because the confidentiality agreement is valid and enforceable. To its motion to dismiss, defendant attached both (1) the 1996 employee manual, which includes the section entitled "Business Ethics, Objectivity and Confidentiality Policy," and (2) the separate, free-standing confidentiality agreement, with the identical title and language as stated in the employee manual, signed by plaintiff on March 12, 1995. Defendant submits that the stand-alone, independent confidentiality policy (as signed by plaintiff in 1995) subsequently was incorporated into defendant's employee manual for 1996. The record reveals that the

previous employee manual was effective in April 1993 and did not contain such a confidentiality policy.

Both the independent document entitled "Business Ethics, Objectivity and Confidentiality Policy" (hereinafter the 1995 agreement) and the portion of the employee manual with the same title (hereinafter the 1996 employee manual) include a section entitled "Confidentiality Assurances," which provides in pertinent part as follows:

"1. During your employment or business relationship with Harpo, and thereafter, to the fullest extent permitted by law, you are obligated to keep confidential and never disclose, use, misappropriate, or confirm or deny the veracity of, any statement or comment concerning Oprah Winfrey, Harpo (which, as used herein, included all entities related to Harpo, Inc., including Harpo Productions, Inc., Harpo Films, Inc.) or any of her/its Confidential Information. The phrase 'Confidential Information' as used in this policy, includes but is not limited to, any and all information which is not generally known to the public, related to or concerning: (a) Ms. Winfrey and/or her business or private life; (b) the business activities, dealings or interests of Harpo and/or its officers, directors, affiliates, employees or contractors; and/or (c) Harpo's employment practices or policies applicable to its employees and/or contractors.

2. During your employment or business relationship with Harpo, and thereafter, you are obligated to refrain from giving or participating in any interview(s) regarding or related to Ms. Winfrey, Harpo, your employment or business relationship with Harpo and/or amy [sic] matter which concerns, relates to or involves any Confidential Information."

Both documents also include a section entitled "Resolving Disputes and Controversies Concerning this Policy," providing that the parties agree to settle any disputes through binding arbitration:

"If a dispute or controversy arises out of or relates to this policy, or the actual or threatened breach thereof, and if said dispute or controversy cannot first be settled through informal discussions between Harpo and the employee(s) or contractor(s) involved, the parties agree to submit the dispute or controversy to binding arbitration which will be administered in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association ('AAA'). Said arbitration shall be the exclusive method of resolving such disputes or controversies unless the alleged violation of this policy also involves an actual or potential violation of some other statue [sic] or legal doctrine including, the Illinois Trade Secrets Act, invasion of privacy, defamation, etc."

The relevant documents also provide that commitment to the

stated policies is required as a condition of employment: "Your commitment to the guidelines set forth in this policy is a condition of your employment or business relationship with Harpo."

In addition, defendant's motion to dismiss attached a copy of plaintiff's acknowledgment of the employee manual, which she signed upon the commencement of her employment at defendant in 1993. The acknowledgment signed by plaintiff states in relevant part:

> "I acknowledge and understand that I may not use any confidential or proprietary information of HARPO for my own purposes either during or after my employment with HARPO, and I understand that I am prohibited from removing, disclosing or otherwise misappropriating any of HARPO's confidential or proprietary information for any reason."

Also attached to defendant's motion to dismiss was an affidavit of Bernice Smith, the director of human resources for defendant. Smith attested to the truth and accuracy of the documents attached, including the 1993 employee manual, the 1996 employee manual, and the 1995 confidentiality agreement signed and acknowledged by plaintiff.

On November 13, 1998, the trial court granted defendant's section 2—619 motion to dismiss as to count I, finding that an enforceable contract exists, its terms are reasonable and it protects a legitimate business interest of defendant. Furthermore, the trial court ordered that, to enforce the contractual obligation, the parties must submit the controversies relative to confidentiality to binding arbitration as they pledged to do in the contract.

■ We apply a *de novo* standard of review in an appeal from the granting of a dismissal under section 2—619. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997); *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1047 (1998). "The question on appeal from an order granting dismissal under section 2—619 is 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10 (1999), quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

■ While a section 2—619 motion for involuntary dismissal admits the truth of all well-pled facts in the complaint, conclusions of law are not taken as true. *Mostafa v. City of Hickory Hills*, 287 Ill. App. 3d 160, 165 (1997). Moreover, section 2—619 allows a court to dismiss a complaint where the claim asserted is barred by some affirmative matter that refutes crucial conclusions of law. *Asher v. Farb Systems, Inc.*, 256 Ill. App. 3d 792, 794 (1993). Furthermore, where, as here, defendant supports its motion to dismiss with an affidavit, the facts in the

affidavit will be taken as true because the plaintiff did not contradict it by a counteraffidavit. *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 1064 (1995).

On appeal, defendant initially challenges the forum of this dispute. Defendant asserts that an enforceable *arbitration* agreement exists and, therefore, the dispute initiated by plaintiff in her complaint must go to an arbitration panel, not the court system. We disagree.

■ "The determination of whether a restrictive covenant is enforceable is a question of law." *Woodfield Group, Inc. v. DeLisle*, 295 Ill. App. 3d 935, 938 (1998). Similarly stated, this court held that "[t]he issue of whether the parties have entered into an enforceable contract is not arbitrable because the question of whether a contract existed is an issue of law determinable only by a court." *Barter Exchange, Inc. v. Barter Exchange, Inc.*, 238 Ill. App. 3d 187, 192 (1992) (and cases cited therein); see also *Lyle R. Jager Agency, Inc. v. Steward*, 253 Ill. App. 3d 631, 636 (1993) ("the enforceability of a restrictive covenant is a question of law").

■ Defendant primarily relies on the supreme court decision in *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435 (1988), which addressed the issue of whether a particular dispute was covered within the arbitration agreement and the corresponding issue of who should decide arbitrability, *i.e.*, the court or the arbitrator. In *Barr*, the supreme court held:

"If it is obvious that there was an agreement to arbitrate the dispute in question, that is, if the dispute clearly falls within the scope of the arbitration agreement, the court should order arbitration. If it is clear that it does not, arbitration should be refused. *** [I]n unclear cases *** the court should initially defer the arbitrability question to the arbitrator." *Barr*, 124 Ill. 2d at 449-50.

■ Unlike the *Barr* case, however, the present plaintiff does not contest the *arbitration* agreement but, rather, challenges the validity of the *confidentiality* agreement. It is axiomatic that if the court were to find that no enforceable contract exists, as a matter of law, then there would be no contractual provisions to arbitrate. Thus, we find that the court, not an arbitration panel, is the proper forum to consider and decide plaintiff's challenge to the validity and enforceability of the present confidentiality agreement.

■ Second, defendant contends that plaintiff waived any challenge to the 1995 confidentiality agreement because plaintiff linked her complaint only to the 1996 employee manual. Defendant relies on the principle that an issue not presented to the trial court will be deemed waived on appeal. *Phillips v. DeCarlo*, 301 Ill. App. 3d 680, 682 (1998) ("[t]his issue was not presented in the first instance to the trial court, and we deem it waived on appeal").

The record refutes defendant's waiver argument because the trial court clearly considered the 1995 agreement, as it was attached to defendant's motion to dismiss and argued therein. Most notably, the trial court, in its order, specifically referred to the 1995 agreement, stating that "[t]he Complaint also failed to disclose that on March 12, 1995, plaintiff signed a Business Ethics, Objectivity and Confidentiality Policy which defendant has attached to the Motion to Dismiss as an exhibit." Furthermore, the language of the confidentiality policy in both the 1995 agreement and the 1996 employee manual is identical. Based on this record, defendant's waiver argument fails.

Finally, plaintiff asserts that the confidentiality policy is not enforceable, primarily arguing that it is overly broad and not reasonably necessary to protect defendant's legitimate business interests. Defendant, however, contends that the confidentiality agreement is enforceable because it does not violate any public policy, was supported by adequate consideration, was not an adhesion contract and properly protected defendant's legitimate business interests.

Until the filing of her appellate reply brief, plaintiff relied on the 1996 employee manual to support her cause of action, contending that the confidentiality policy contained therein was not enforceable because the 1996 employee manual included a contract disclaimer, i.e., "[t]his manual is not a contract." Plaintiff relied on case law that addressed whether an employee handbook creates contractual rights. *E.g., Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482 (1987).

■ In light of the facts in the present case, the employee-handbook analysis is unnecessary because defendant attached the 1995 agreement to its section 2—619 motion to dismiss as the affirmative matter refuting plaintiff's crucial conclusions of law based on the 1996 employee manual and the language in both documents is identical. As acknowledged by plaintiff in her appellate reply brief, "[t]he covenant in the manual contains precisely the same language and terms as the confidentiality agreement which plaintiff signed on March 12, 1995." Plaintiff further stated that her arguments as to the enforceability of the restrictive covenant remain the same regardless of which version is considered. Accordingly, we will not unnecessarily elongate this opinion by conducting a pointless exercise to determine whether the 1996 employee manual created a contract. Instead, we consider the identical language contained in the 1995 agreement to determine its validity.

■ "A postemployment restrictive covenant will be enforced if its

terms are reasonable." *Woodfield Group*, 295 Ill. App. 3d at 938.[1] To determine the reasonableness of a restrictive covenant, "it is necessary to consider whether enforcement of the covenant will injure the public, whether enforcement will cause undue hardship to the promisor and whether the restraint imposed by the covenant is greater than is necessary to protect the interests of the employer." *Tower Oil & Technology Co. v. Buckley*, 99 Ill. App. 3d 637, 642 (1981).

■ The reasonableness of some types of restrictive covenants, such as nonsolicitation agreements, also is evaluated by the time limitation and geographical scope stated in the covenant. *Tower Oil & Technology*, 99 Ill. App. 3d at 642. However, a confidentiality agreement will not be deemed unenforceable for lack of durational or geographic limitations where trade secrets and confidential information are involved. *Pepsico, Inc. v. Redmond*, 54 F.3d 1262, 1272 n.10 (7th Cir. 1995), quoting section 8(b)(1) of the Illinois Trade Secrets Act (765 ILCS 1065/8(b)(1) (West 1994)) ("a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographic limitation on the duty").

Postemployment restrictive covenants typically involve agreements by a past employee not to compete with the business of her former employer, not to solicit clients or customers of her former employer, and not to disseminate trade secrets of her former employer. The covenants in these typical cases are carefully scrutinized because Illinois courts abhor restraints on trade. See *Gillespie v. Carbondale & Marion Eye Centers, Ltd.*, 251 Ill. App. 3d 625, 626 (1993).

Although restraint of trade is a significant concern, "[a]n equally important public policy in Illinois is the freedom to contract." *Prairie Eye Center, Ltd. v. Butler*, 305 Ill. App. 3d 442, 448 (1999). Furthermore, postemployment restrictive covenants "have a social utility in that they protect an employer from the unwarranted erosion of confidential information." *Tower Oil & Technology*, 99 Ill. App. 3d at 642.

■ Unlike the traditional line of restrictive covenant cases, the confidentiality agreement at issue in the instant case does not impose any of the typical restrictions commonly adjudicated in restrictive covenant cases. Defendant does not seek to restrain plaintiff's future career. Plaintiff is free to choose her future occupation, the locale in which she may choose to work, and the time when she can commence

---

[1]Plaintiff's reliance on *Creative Entertainment, Inc. v. Lorenz*, 265 Ill. App. 3d 343 (1994), is completely unpersuasive because this court expressly rejected that decision in *Woodfield Group*.

her new career. Defendant does not object to plaintiff becoming a journalist, competing with defendant in the same venue and in any locale, including Chicago, and in beginning her new venture immediately. The confidentiality agreement does not restrict commerce and does not restrict plaintiff's ability to work in any chosen career field, at any time. Instead, the 1995 confidentiality agreement restricts plaintiff's ability to disseminate confidential information that she obtained or learned while in defendant's employ. Most certainly, plaintiff had no problem with keeping confidences as long as she was a senior associate producer and continued her work with defendant.

Moreover, we find unpersuasive plaintiff's argument that the confidentiality agreement is too broad because it remains effective for all time and with no geographical boundaries. Whether for better or for worse, interest in a celebrity figure and his or her attendant business and personal ventures somehow seems to continue endlessly, even long after death, and often, as in the present case, extends over an international domain.

Under the facts of this case and the terms of the restrictive covenant at issue, we find that the 1995 confidentiality agreement is reasonable and enforceable. Accordingly, we affirm the trial court's order dismissing plaintiff's cause of action as stated in count I of her complaint. Any future questions concerning the scope of the 1995 confidentiality agreement must go to arbitration.

Affirmed.

HARTMAN and QUINN, JJ., concur.