# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Watkins v. Office of the State Appellate Defender, 2012 IL App (1st) 111756**

---

| | |
|---|---|
| Appellate Court Caption | JAQUELINE WATKINS, as Personal Representative of Edward A. Watkins, Sr., Deceased, Plaintiff-Appellant, v. OFFICE OF THE STATE APPELLATE DEFENDER, Defendant-Appellee.–ALICE WASHINGTON and NATHANIEL WASHINGTON, Plaintiffs-Appellants, v. OFFICE OF THE APPELLATE DEFENDER, and MICHAEL J. PELLETIER, State Appellate Defender, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-11-1756, 1-11-2104 cons. |
| Rule 23 Order filed | June 8, 2012 |
| Rule 23 Order withdrawn | July 12, 2012 |
| Opinion filed | August 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs' complaints against the Office of the Appellate Defender and the State Appellate Defender, individually, under the Illinois Human Rights Act alleging retaliation and racial and disability discrimination were properly dismissed with prejudice on the grounds that the trial court lacked jurisdiction and that the Court of Claims was the proper forum, and even if plaintiffs were allowed to amend their complaints to assert claims under Title VII of the Civil Rights Act of 1964 that would fall within the circuit court's jurisdiction, such amendments would be futile because those claims would have been barred as untimely due to the expiration of the 90 days granted in the "right-to-sue" letters issued to plaintiffs by the Equal Employment Opportunity Commission. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-4586; the Hon. Bill Taylor, Judge, presiding, and No. 10-L-007586; the Hon. Raymond Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Matthew T. Layman and John Thomas Moran, Jr., both of Moran Law Group, of Chicago, for appellants.<br><br>Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.[1]<br>Presiding Justice Epstein and Justice Howse[2] concurred in the judgment and opinion. |

**OPINION**

¶ 1                                    Nature of the Case

¶ 2        Plaintiffs Edward Watkins and Alice and Nathaniel Washington appeal from orders from the circuit court of Cook County dismissing with prejudice their complaints against defendant, the Office of the Appellate Defender, and Alice and Nathaniel Washington's complaint against Michael Pelletier, the State Appellate Defender, for lack of subject matter jurisdiction. The complaint was brought against the State, Watkins' and Alice Washington's employer, under the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/1-101 *et seq.* (West 2010)) for retaliation, as well as race and disability discrimination. The circuit court found that it lacked subject matter jurisdiction over those matters on the grounds that the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/1 (West 2010)) in conjunction with the Court of Claims Act (705 ILCS 505/8(a) (West 2010)) provide that the exclusive

---

[1]Justice Joseph Gordon originally authored this order. Justice McBride has adopted this as the court's opinion following Justice Gordon's passing.

[2]Justice Howse, as the new panel member, has reviewed the briefs and listened to the audio recording of the oral arguments.

forum for claims against the State of Illinois under the Human Rights Act rests in the Court of Claims. Plaintiffs now contend that the State has waived immunity under the Immunity Act to claims brought under the Human Rights Act and, alternatively, that their complaint should have been dismissed without prejudice so they could amend the complaint, such that it would fall under one of the exceptions to the Immunity Act. For the reasons discussed below, we affirm the decision of the circuit court.

¶ 3                                                    BACKGROUND

¶ 4         We have not been provided with a transcript of the proceedings at the trial level, and plaintiffs have provided only a sparse common law record. Based on that common law record, with regard to plaintiff Alice Washington and her husband Nathaniel Washington, it appears that on June 30, 2010, they filed a five-count complaint, alleging racial and disability discrimination and seeking damages for intentional infliction of emotional distress and loss of consortium. It is undisputed that Alice Washington (hereinafter Alice) was a former investigator for the Office of the State Appellate Defender, where defendant Michael Pelletier was a Deputy Defender.

¶ 5         Those plaintiffs alleged in their complaint that Alice was hired on January 2, 1997. According to the complaint, Pelletier was appointed State Appellate Defender on January 1, 2008, and on January 16, 2008, while Alice was on medical leave, he reduced her salary from $60,400 to $49,400 per year. Alice, who is African American, then filed a grievance, alleging race and/or disability discrimination as the reason for her salary reduction. It appears that Alice's alleged disability consists of breast cancer, which caused her to go on medical leave at some point prior to January 2008. On February 4, 2008, Pelletier informed Alice that she had the option to resign from her position with benefits or to be discharged for failure to complete an office survey on how much time she spent doing each of her tasks and for failing to complete a "notes" section of a "calendaring program." The complaint does not explain what the calendaring program entails or what information the "notes" section would contain. Plaintiffs allege that Alice was on medical leave when she was required to complete the office survey and that the reason why she had not completed the "notes" section of the program was that her supervisor had instructed investigators not to complete it "at the request of attorneys [in her office] who feared the information could potentially be subpoenaed." Alice then resigned. Plaintiffs further alleged that about the time that Alice resigned, two other investigators who, like her, were African American, were given the option to resign or be discharged. In contrast, two investigators who were not African American were not asked to resign, even though they, like Alice, had not completed the "notes" section of the calendar program.

¶ 6         The complaint noted that on February 21, 2008, Alice filed a charge of discrimination with the Illinois Department of Human Rights (Department) alleging, *inter alia*, that the Office of the State Appellate Defender forced her to resign in retaliation for opposing unlawful discrimination because of her race, African American, and her disability, breast cancer. On February 16, 2010, the Department dismissed Alice's charge for "lack of substantial evidence." Alice filed a request for review with the Illinois Human Rights

Commission (Commission), and on April 26, 2010, the Commission reinstated Alice's charges and remanded them to the Department for entry of a finding of "substantial evidence" on Alice's charge of retaliation for opposing discrimination, as well as on her charges of racial and disability discrimination.

¶ 7 Accordingly, in their complaint filed at the circuit court, plaintiffs claimed that defendants violated Alice's civil rights, in contravention of the provisions of the Human Rights Act, by: (1) retaliating against her for filing a grievance opposing what she believed to be unlawful discrimination (count I); (2) asking her to resign on the basis of racial discrimination (count II); and (3) asking her to resign on the basis of her disability without attempting to accommodate to her medical condition (count III). In addition, plaintiffs allege intentional infliction of emotional distress against Pelletier (count IV), and plaintiffs jointly allege loss of consortium against both defendants (count V).

¶ 8 We further note that defendants allege, and plaintiffs do not dispute, that on January 4, 2011, the Equal Employment Opportunity Commission (EEOC) issued Alice a "right-to-sue letter" with regard to her salary-reduction claim, which stated that any complaint brought under certain federal statutes, including Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (West 2006)), must be brought within 90 days of her receipt of that notice, or her right to sue defendant on that charge would be lost. It does not appear, however, that Alice was issued a similar right-to-sue letter with respect to her charge of constructive discharge.

¶ 9 With regard to plaintiff Watkins, it appears that on April 19, 2010, he filed a complaint against the Office of the State Appellate Defender, where he had been employed for three years as chief investigator, alleging racial discrimination. Similarly to Washington's complaint, Watkins alleged that on January 18, 2008, Pelletier approached him and asked Watkins to resign and informed Watkins that if he refused, he would be discharged for allegedly signing into work and submitting a travel voucher for a time period when Watkins had not worked. Watkins refused to resign, and on February 4, 2008, he received a notice of discharge, which stated that Watkins was being discharged because: (1) his position was being eliminated; (2) he had failed to comply with a "calendaring program"; and (3) poor work performance.

¶ 10 Watkins alleged that the allegations in his notice of discharge were untrue and that his work performance reviews for 2006 and 2007 had met or exceeded the State's standards. He further claimed, similarly to Washington, that the State failed to discharge other investigators who had not used the calendaring program but who, unlike Watkins, were not African American. According to the complaint, Pelletier intentionally targeted Watkins for discharge due to his race and age. According to Watkins, those actions amounted to a violation of his civil rights under the Human Rights Act, which entitled him to damages.

¶ 11 Watkins' complaint further stated that in June 2008, he filed a charge of discrimination with the Department alleging that the Office of the State Appellate Defender "constructively discharged" him because of his race, African American, and his age, in violation of the Human Rights Act. The Department twice dismissed his charge for lack of substantial evidence, and after each dismissal, the Department asked the Commission to vacate the

dismissal in response to Watkins' requests for review. On January 13, 2010, the Department turned around and issued a notice that Watkins' charge was supported by substantial evidence.

¶ 12    Further, the record indicates that Watkins also filed a charge of discrimination with the EEOC on March 12, 2008. On April 18, 2008, the EEOC issued him a "right-to-sue" letter informing him that he may file suit against defendant under federal law based on his charge of racial discrimination. The letter stated that any such actions "must be filed within 90 days of your receipt of this notice; or your right to sue based on this charge will be lost."

¶ 13    Defendants filed motions to dismiss both the Washingtons' and Watkins' complaints pursuant to section 2-619 of the Illinois Code of Civil Procedure (see 735 ILCS 5/13-205 (West 2010)). Defendants argued Watkins' complaint, as well as counts I, II and III should be dismissed against the Office of the State Appellate Defender because under the Immunity Act, sovereign immunity bars claims against the State, including claims brought under the Human Rights Act, from being heard before the circuit court. Similarly, they argued that sovereign immunity barred Alice and Nathaniel Washington's claims against Pelletier because his alleged misconduct was within the scope of his employment with the State. Further, they argued that those counts against Pelletier should be dismissed because the Human Rights Act imposes liability upon employers, not upon agents of those employers acting within the scope of their agency. Defendants further maintained that counts IV and V of the Washingtons' complaint were barred by the statute of limitations. Although not raised in this appeal, defendants also appeared to argue that counts IV and V of that complaint should be dismissed against Pelletier under the doctrines of absolute immunity and public official immunity.

¶ 14    In their respective responses to defendants' motion to dismiss, plaintiffs argued that their claims are not barred by sovereign immunity because the conduct alleged by plaintiffs would be covered under the provisions of Title VII. Plaintiffs maintained that the Immunity Act, by its own terms, does not apply to actions brought under Title VII, and while plaintiffs' claims were not brought under that federal statute, the exception to the Immunity Act should nevertheless extend to conduct encompassed under the provisions of Title VII. Alternatively, plaintiffs asked the circuit court to give them leave to amend their complaint so as to explicitly bring their claims pursuant to Title VII, rather than the Human Rights Act.

¶ 15    On May 11, 2011, the circuit court granted defendants' motion to dismiss Watkins' complaint, apparently after a hearing. In its order, the court rejected Watkins' argument that the express waiver of sovereign immunity with respect to Title VII claims applied to his case, since he had not included any Title VII claims in his complaint. It further found that Watkins was time-barred from amending his complaint to include Title VII claims because the statute of limitations had expired on those claims in 2008. The court further noted in its order that Watkins had failed to show that the 2008 amendments to the Human Rights Act somehow waived sovereign immunity. In addition, the court found that, at any rate, Watkins' complaint under the Human Rights Act would be time-barred because it was filed more than two years after Watkins received his notice of discharge.

¶ 16    With respect to the Washingtons' complaint, the record indicates that a hearing on

defendants' motion was held on June 2, 2011, and six days later, the circuit court entered an order granting defendants' motion to dismiss. In its written order, the court stated that, contrary to plaintiffs' contentions, the State has not waived its immunity to claims brought under the Human Rights Act because those claims are not one of the exceptions to the State's immunity listed in the Immunity Act. It further noted that neither the Human Rights Act nor the Immunity Act contains any clear and unequivocal language waiving the State's immunity as required to effectuate such waiver. The order further noted that while the State waived its immunity to claims brought under Title VII, that waiver does not extend to claims brought under the Human Rights Act, even though they prohibit similar conduct. Similarly, the court reasoned, in its written order, that plaintiffs' claims against Pelletier were barred by the Immunity Act because his conduct was within the scope of his employment. The court then granted defendants' motion to dismiss with prejudice. However, the written order does not contain the circuit court's reasoning for denying plaintiffs' request to amend their complaint so as to plead violations of Title VII and, as previously noted, we have not been provided with the transcripts of the hearing before the circuit court.

¶ 17        On appeal, plaintiffs now contend that the circuit court erred in dismissing their complaints because defendants do not enjoy sovereign immunity from plaintiffs' discrimination and retaliation claims brought under the Human Rights Act. Plaintiffs maintain that the language of a recent amendment to the Human Rights Act allows plaintiffs to file suit in the circuit court, which, they contend, amounts to a waiver of the State's immunity to claims brought under that Act in the circuit court. They further contend, as they did in the court below, that even if the amendment to the Human Rights Act, which allows suits to be brought in the circuit court, does not amount to a waiver of immunity, their claims would nevertheless fall under the exception provided for violations of Title VII. In that regard, plaintiffs contend that if the State's waiver of immunity to claims under Title VII does not extend to claims brought under the Human Rights Act, the court should have allowed plaintiffs to amend their complaint so as to bring their claim under Title VII. Further, Watkins contends that the trial court erred in finding that his claim under the Human Rights Act was time-barred because the two-year statute of limitations was tolled when he filed a charge with the Department. Lastly, Alice and Nathaniel Washington contend that the circuit court erred in finding that the Human Rights Act does not provide for individual liability against Pelletier.

¶ 18                                                                          ANALYSIS

¶ 19        At the outset, we note that while ordinarily, in the absence of a record of the proceedings below, it is presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis, those transcripts may be unnecessary when an appeal confronts solely a question of law, which we review *de novo*. *Gonnella Baking Co. v. Clara's Pasta di Casa, Ltd.*, 337 Ill. App. 3d 385, 388, 786 N.E.2d 1058, 1051 (2003); see also *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 223, 889 N.E.2d 1167, 1179 (2008). Where we have all of the underlying submissions of fact from which the trial court would ascertain whether a genuine issue of fact exists, we are free under our *de novo* standard of review to make our own determinations of law. *Gonnella Baking Co.*, 337

-6-

Ill. App. 3d at 388, 786 N.E.2d at 1051; *Fields*, 383 Ill. App. 3d at 223, 889 N.E.2d at 1179.

¶ 20   Since this court reviews *de novo* an order of dismissal pursuant to section 2-619 (*Coady v. Harpo, Inc.*, 308 Ill. App. 3d 153, 158, 719 N.E.2d 244, 248 (1999)), we do not need the transcripts of the hearing below to review the propriety of the circuit court's dismissal. On review, the question is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal, or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109-10, 708 N.E.2d 1140, 1143-44 (1999) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993)). Accordingly, we now turn to plaintiffs' contention that the language of the Human Rights Act indicates the legislature's intent to waive the State's immunity to claims brought under that statute.

¶ 21   The doctrine of sovereign immunity exists in Illinois pursuant to the Immunity Act, which mandates that the State or a department of the State cannot be a defendant in an action brought directly in the circuit court, except where the State has expressly consented to be sued. 745 ILCS 5/1 *et seq.* (West 2010); *President Lincoln Hotel Venture v. Bank One, Springfield*, 271 Ill. App. 3d 1048, 1054, 649 N.E.2d 432, 437 (1994). The Immunity Act states that, except for a few enumerated exclusions, "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2010). Further, the Court of Claims Act provides that "[t]he Court [of Claims] shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative office or agency." 705 ILCS 505/8(a) (West 2010). Here, plaintiffs' complaint was brought against the State under the Human Rights Act in the circuit court.

¶ 22   Although the Human Rights Act previously provided the Human Rights Commission with exclusive jurisdiction to hear civil rights claims, the statute was amended to allow complainants to proceed in the circuit court after the Commission dismisses their charges. 775 ILCS 5/7A-102(C)(4), (K) (West 2010). Plaintiffs now claim that this amendment indicates that the State intended to waive its immunity with respect to claims brought under the Human Rights Act. They maintain that the amendment to the Human Rights Act is part of a "comprehensive statutory scheme" to provide all claimants under the Human Rights Act, including those who bring suit against the State, with the option to bring their complaints in the circuit court. In addition, plaintiffs note that the amendment to the Human Rights Act was enacted after the legislature enacted section 1.5 of the Immunity Act, which, and, as shall be more fully discussed below, allows discrimination claims under Title VII to be brought against the State in the circuit court. According to plaintiffs, the legislature presumably was aware of the exception for Title VII claims when it enacted the amendment which allows claims under the Human Rights Act to be brought in the circuit court, indicating that the legislature intended the Human Rights Act amendment as a waiver of sovereign immunity to discrimination claims brought against the State.

¶ 23   However, this argument has been raised and rejected in the federal district court case of *Harris v. Illinois*, 753 F. Supp. 2d 734, 741 (N.D. Ill. 2010). In that case, the court correctly noted that our supreme court has held that "[a] waiver of the [S]tate's sovereign immunity must be clear and unequivocal." (Internal quotation marks omitted.) *Harris*, 753 F. Supp. 2d

at 741 (quoting *In re Special Education of Walker*, 131 Ill. 2d 300, 303, 546 N.E.2d 520, 522 (1989), quoting *Martin v. Giordano*, 115 Ill. App. 3d 367, 369, 450 N.E.2d 933, 934 (1983)). "It 'must be expressed through specific legislative authorization and must appear in affirmative statutory language.' " *Id.* (quoting *Walker*, 131 Ill. 2d at 304, 546 N.E.2d at 522). Further, as the court correctly stated, it is presumed that statutes related to the same subject are to be read harmoniously, so that effect can be given to each one to the extent possible, even if there is a conflict. *Id.* (citing *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 555, 813 N.E.2d 119, 125 (2004)). The court in *Harris* then pointed out that, as noted above, the Immunity Act expressly states that the State does not waive immunity except as provided in certain other statutes, and the Human Rights Act is not enumerated as an exception to the Immunity Act. *Harris*, 753 F. Supp. 2d at 741 (citing *Cook v. Illinois Department of Corrections*, No. 09-cv-0122-DRH, 2009 WL 2588871 (S.D. Ill. Aug. 20, 2009), and *Neuman v. United States*, No. 07-cv-0362-MJR, 2008 WL 3285761 (S.D. Ill. Aug. 7, 2008)). Thus, the court correctly concluded that while complaints brought under the Human Rights Act may now proceed in an Illinois circuit court, there is no affirmative language in the Human Rights Act, or in the Immunity Act, stating that the State has waived its immunity for claims under the Human Rights Act. *Id.*; *cf. People ex rel. Madigan v. Excavating & Lowboy Services, Inc.*, 388 Ill. App. 3d 554, 563-64, 902 N.E.2d 1218, 1228 (2009) (while the environmental act demonstrates a clear intent to hold parties who damage the environment accountable for their actions, it did not amount to a waiver of the State's sovereign immunity because the act does not contain an express consent by the State to be sued under that act). Accordingly, we reject plaintiffs' contention that the amendment to the Human Rights Act which allows claims under that Act to proceed in circuit court waives the State's sovereign immunity for those claims.

¶ 24    Plaintiffs next contend that, even if the amendment to the Human Rights Act did not waive the State's immunity to claims brought under that statute, their complaint nevertheless falls under another exception to the Immunity Act, which expressly waives the State's immunity to conduct that would violate Title VII. Plaintiffs maintain that while they brought their complaint under the Human Rights Act, defendants' alleged conduct in retaliating against Alice, and discriminating against her based on her race, is also a violation of Title VII. According to plaintiffs, they made a technical mistake in "captioning" their complaint as a claim brought under the Human Rights Act, rather than Title VII, but the substance of their complaint falls within the aforementioned exception to the Immunity Act.

¶ 25    Section 1.5(e) of the Immunity Act provides:

"An employee, former employee, or prospective employee of the State who is aggrieved by any conduct or action or inaction of the State that would constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., as amended, if committed by an employer covered by that Act may bring an action under Title VII of the Civil Rights Act of 1964 against the State in State circuit court or federal court." 745 ILCS 5/1.5(e) (West 2010).

¶ 26    Title VII states, in pertinent part, that "[i]t shall be unlawful employment practice for an employer *** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). Likewise, it is unlawful, under Title VII, for an employer to "discriminate against any of his employees or applicants for employment *** because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2006). Thus, plaintiffs now argue that the alleged conduct of the Office of the State Appellate Defender in forcing her to resign because of her race, and in retaliation for filing a grievance, would constitute a violation of Title VII and, therefore, falls under the above-described exception under the Immunity Act. We disagree.

¶ 27    As noted above, it is well established that any waiver of the State's immunity must be "clear and unequivocal" and expressed through specific authorization in affirmative statutory language. *Walker*, 131 Ill. 2d at 303-04, 546 N.E.2d at 522; *Martin*, 115 Ill. App. 3d at 369, 450 N.E.2d at 934; *Madigan*, 388 Ill. App. 3d at 560, 902 N.E.2d at 1228. Although, as previously mentioned, the Immunity Act appears to waive the State's sovereign immunity for claims that are actually brought under Title VII, the Immunity Act does not state whether an individual may bring an action against the State under any other laws that provide a remedy for the same type of conduct that also happens to violate Title VII.

¶ 28    While there do not appear to be any state court decisions on this issue, a federal decision has interpreted section 1.5 of the Immunity Act to disallow claims which are brought under statutes that are not expressly enumerated in that Act, even in cases where the alleged conduct also falls within statutes that are enumerated as exceptions to the act. In *Bottoms v. Illinois Department of Human Services*, No. 03 C 1881, 2004 WL 1403811, at *2 (N.D. Ill. June 22, 2004), the district court held that while the exceptions to the Immunity Act were applicable to the plaintiff's discrimination claims brought under Title VII, they did not apply to her claims brought pursuant to 42 U.S.C. §§ 1981 and 1983. In that case, the plaintiff filed a complaint against her former employer alleging discrimination based on race, color and disability, as well as retaliation for opposing discrimination. *Id.* at *1. She brought those claims under Title VII and the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 *et seq.* (2006)), as well as under 42 U.S.C. §§ 1981 and 1983. *Bottoms*, 2004 WL 1403811, at *1. In dismissing plaintiff's claims under the ADA and 42 U.S.C. §§ 1981 and 1983, and in further dismissing portions of her Title VII claim, the court found that section 1.5 of the Immunity Act was not applicable to her ADA claim because it was not retroactive. *Id.* at *2. It further found that some of the discriminatory misconduct giving rise to her Title VII claim was time barred. *Id.* at *4. The court further dismissed her claims under 42 U.S.C. §§ 1981 and 1983 because those acts were not included as exceptions in section 1.5 of the Immunity Act. *Id.* at *2. Notably, the alleged conduct underlying plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 was the same as the conduct that gave rise to her remaining claim under Title VII, namely, discrimination based on race and retaliation. *Id.* Nevertheless, the court refused to include the claims under 42 U.S.C. §§ 1981 and 1983 as exceptions to the State's immunity on the coattails of the exception for claims under Title VII.

¶ 29    Accordingly, we conclude that plaintiffs' complaint could only have been actionable in the circuit court if she had brought it under Title VII, rather than the Human Rights Act.

While plaintiffs argue that they merely made a mistake in "captioning" their complaint under the Human Rights Act, and that presumably their complaint was brought under Title VII, it appears from the record that their claims of discrimination and retaliation were brought solely pursuant to the Human Rights Act. Having found that the plaintiffs' claims brought under the Human Rights Act are barred by sovereign immunity, we need not reach Watkins' contention that his claim under the Human Rights Act would have been time-barred by the statute of limitations.

¶ 30 Plaintiffs nevertheless contend, as they did below, that if nothing else, they should have been granted leave to amend their complaint such that they may bring their claims under Title VII of the Civil Rights Act of 1964. We first note that, with respect to Alice and Nathaniel Washington's request for leave to amend their complaint, plaintiffs have not provided a sufficient record of the proceedings below to permit us to decide this appeal in its favor. See *Lill Coal Co. v. Bellario*, 30 Ill. App. 3d 384, 385, 332 N.E.2d 485, 486 (1975); see also *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984). As noted above, the circuit court had a hearing on defendants' motion to dismiss, the transcripts of which have not been provided to us. Unlike the circuit court's mere decision to dismiss a complaint pursuant to section 2-619, its decision to grant or deny a party leave to amend its pleadings is within the sound discretion of the circuit court, and a reviewing court will not reverse such decision absent an abuse of discretion. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69, 955 N.E.2d 1110.

¶ 31 As previously mentioned, in the absence of the transcripts of the proceeding at the lower court, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis, and any doubts which may arise from incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959. In that case, since appellant did not provide a transcript, or bystander's report, of the hearing on a motion to vacate, there was no basis for holding that the trial court had committed an error in denying the motion. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959; see also *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156, 839 N.E.2d 524, 531-32 (2005) (holding that absent an adequate record preserving the claimed error, any doubts arising from the incompleteness of the record will be resolved against the appellant, and the order of the circuit court will be affirmed); see also *Coleman v. Windy City Balloon Port Ltd.*, 160 Ill. App. 3d 408, 419, 513 N.E.2d 506, 513-14 (1987) ("it is not the obligation of the appellate court to search the record for evidence supporting reversal of the circuit court. *** When portions of the record are lacking, it will be presumed that the trial court acted properly in entry of the challenged order and that the order is supported by the part of the record not before the reviewing court." (citing *Mielke v. Condell Memorial Hospital*, 124 Ill. App. 3d 42, 48-49, 463 N.E.2d 216, 222 (1984), and *In re Marriage of Hofstetter*, 102 Ill. App. 3d 392, 396, 430 N.E.2d 79, 82 (1981))).

¶ 32 In this case, defendant has failed to provide us with any report of the proceedings below. See Ill. S. Ct. R. 323(a) (eff. Dec. 13, 2005). All that appears before us is the common law record, which includes the defendants' motion for summary judgment, plaintiffs' response, defendants' reply, and trial court's order granting defendants' motion to dismiss plaintiffs' complaint with prejudice.

¶ 33    The circuit court's written order dismissing the Washingtons' complaint articulates its reasons for dismissing the complaints, namely, that it was barred by sovereign immunity. The court's order, however, does not provide an explanation for rejecting plaintiffs' request, contained in their response to defendants' motion to dismiss, for leave to amend their complaint. Without a transcript or bystander's report of the hearing, which the record indicates to have been conducted by the court, the factors that prompted the circuit court to deny the plaintiffs' request to amend their complaint at that stage remain unknown. As such, we can only speculate as to the reasons for the circuit court's decision to deny plaintiffs' request to amend their complaint. Such speculation is not an adequate basis upon which we may conclude that the circuit court abused its discretion in dismissing the plaintiffs' complaint with prejudice. Therefore, under these circumstances, we must presume that the circuit court's ruling had a sufficient factual basis and was in conformity with the law. See *Corral*, 217 Ill. 2d at 156, 839 N.E.2d at 531-32; *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959; *Coleman*, 160 Ill. App. 3d at 419, 408 N.E.2d at 513-14.

¶ 34    With respect to Watkins' request for leave to amend his complaint, the circuit court's written order does, in fact, provide its reason for its denial, namely, that even if he were allowed to amend his complaint so as to include a claim under Title VII, such a claim would be time-barred for failure to proceed within 90 days of receipt of his right-to-sue letter. However, we next note that with respect to both Watkins', as well as the Washingtons', complaints, the circuit court did not abuse its discretion in denying plaintiffs leave to amend their respective complaints, regardless of the absence of a transcript. In determining whether the circuit court abused its discretion in denying a motion for leave to amend a complaint, this court takes into account: (1) whether the proposed amended complaint would cure defective pleadings; (2) whether the amendment would surprise or prejudice the opposing party; (3) whether the amendment was timely filed; and (4) whether the moving party had previous opportunities to amend. *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill. App. 3d 76, 86, 948 N.E.2d 219, 229 (2011). If the amendment would not have cured a defect in the pleading, the other factors are superfluous. *Cooney v. Magnabosco*, 407 Ill. App. 3d 264, 270, 943 N.E.2d 290, 297 (2011).

¶ 35    Here, if either Watkins or the Washingtons had amended their complaints to include a claim under Title VII at the time the circuit court dismissed their complaints, such an amendment would have been futile. Title VII allows a plaintiff no more than 90 days to file a claim once that plaintiff receives a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1) (2006). With regard to Watkins' claim, the record shows that a right-to-sue letter was issued to him on April 18, 2008, which even stated explicitly that his right to sue based on his discrimination charge would be lost if he did not file suit within 90 days of receipt of that notice. Thus, in May 2011, when the circuit court denied him leave to file an amended complaint, any action under Title VII would have been time-barred. Similarly, with respect to Washington's claim based on her salary reduction, she apparently received a right-to-sue letter on January 4, 2011, and an action under Title VII would, therefore, be barred in June 2011, when the circuit court denied her leave to file an amended complaint to include claims under Title VII.

¶ 36    Furthermore, with regard to Alice Washington's claims based on her discharge, it appears

-11-

that she would be likewise barred from filing such an amended complaint had she been granted leave to do so. A plaintiff cannot file a claim under Title VII before the issuance of a right-to-sue letter from the EEOC. See, *e.g.*, *Conner v. Illinois Department of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005) (issuance of a right-to-sue letter by the EEOC is a prerequisite for filing an action under Title VII). It appears that at no time during these proceedings has Alice alleged that she was ever issued a right-to-sue letter with regard to her charges based on discharge, nor has she produced any such letter. Thus, at the time the circuit court denied her leave to file an amended complaint to include a claim under Title VII based on her discharge, such complaint would have been barred from ever being filed.

¶ 37       Next, plaintiffs Alice and Nathaniel Washington challenge the circuit court's finding that it lacked jurisdiction to hear the claims asserted against Pelletier individually by reason that the Human Rights Act does not provide for liability against an individual employee. According to those plaintiffs, the Human Rights Act does, in fact, provide for such liability because it prohibits a "person" from retaliating against another for filing a charge. However, that argument has been explicitly rejected by this court in *Anderson v. Modern Metal Products*, 305 Ill. App. 3d 91, 101-02, 711 N.E.2d 464, 471 (1999), at least in cases where the individual acted within the scope of his employment. In that case, where a plaintiff filed a claim of retaliation against her former supervisor, the court found that the circuit court lacked jurisdiction over that claim because where a company official retaliates against an employee in the name of the employer, the retaliation charge must be against the employer, not the official personally. *Id.* at 102, 711 N.E.2d at 471. In doing so, the court noted that while the Human Rights Act prohibits a person from retaliating against another for opposing discrimination, the "person" to whom the statute refers is an employer of less than 15 employees. *Id.* It by no means allows for claims to be brought individually against company employees where the retaliation was not "personally motivated" or "done without the knowledge or consent of the employer." *Id.*

¶ 38       As indicated earlier, plaintiffs' complaint in this case does not purport to allege that Pelletier's alleged conduct in retaliating against Alice for filing a grievance was personally motivated or done without the knowledge or consent of the Office of the State Appellate Defender. Thus, the circuit court properly dismissed the retaliation claim against Pelletier individually.

¶ 39       Plaintiffs' apparent reliance on *Healy v. Vaupel*, 133 Ill. 2d 295, 549, N.E.2d 1240 (1990), for the proposition that sovereign immunity does not apply to a state's agent who has allegedly committed a statutory violation is misplaced. That case states that sovereign immunity is inapplicable to State agents acting outside the scope of their authority, or to those who violate a duty that rises independently of their employment with the State. However, there was no claim in this case, as mentioned above, that Pelletier was acting outside the scope of his employment as the State Appellate Defender when he reduced Alice's salary or when he gave her the choice of resigning or being terminated for failure to complete the notes section of a calendar program. See *Cortright v. Doyle*, 386 Ill. App. 3d 895, 904-05, 898 N.E.2d 1153, 1161-62 (2008) (claim against plaintiff's supervisor at the Department of Children and Family Services for falsely giving her low evaluations and reprimanding her unfairly was barred by sovereign immunity where the alleged misconduct

was unique to her capacity as supervisor). In fact, this court has held that "[a] State employee's violation of policy, regulation, or even a statute does not necessarily avert the application of sovereign immunity." *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 352, 751 N.E.2d 1187, 1194 (2001); see also *Campbell v. White*, 207 Ill. App. 3d 541, 551, 566 N.E.2d 47, 53 (1991) ("[e]ven assuming plaintiff correctly alleges defendant's acts violate the statute and regulations pertaining to the use of oscillating lights and sirens, defendant can act negligently or willfully and wantonly without exceeding the scope of his authority").

¶ 40       For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41       Affirmed.