RAYMOND PIERSON, Petitioner-Appellant, v. UNIVERSITY ORTHOPEDICS, S.C., Respondent-Appellee.

First District (4th Division)    No. 1—94—0635

Opinion filed June 28, 1996.

Arnold & Kadjan, of Chicago (L. Steven Platt and Steven F. McDowell, of counsel), for appellant.

Rudnick & Wolfe, of Chicago (Adrianne C. Mazura and Alan M. Kaplan, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Petitioner, Raymond Pierson, M.D., filed a motion for preliminary injunction to prevent respondent, University Orthopedics, S.C., from terminating his employment until the Illinois Department of Human Rights (IDHR) rendered a decision on his charge of discrimination. The circuit court denied the motion without conducting an evidentiary hearing. Petitioner appealed.

Dr. Pierson, an orthopedic surgeon, began his relationship with University Orthopedics as an employed physician on April 17, 1987. Several years later he became an associate partner. On or about July 1, 1992, and upon execution of a partnership agreement, Dr. Pierson became a senior partner of University Orthopedics.

Pursuant to the partnership agreement, Dr. Pierson was required to work full-time for University Orthopedics and to assume a full and equal share of its financial obligations. The partnership agreement did not require Dr. Pierson to participate in the day-to-day business affairs and management of the staff. Nor did he, as these responsibilities were reserved for members of the partnership's executive committee and its managing partner. However, Dr. Pierson, together

with the other senior partners, had the power and authority to determine who would be employed by University Orthopedics as an employed physician, associate or senior partner, and to dismiss any of these persons for cause or not for cause.

During 1992 and early 1993, University Orthopedics, by and through its senior partners, contemplated asking an orthopedist specializing in hand surgery to join the partnership. Dr. Pierson suggested University Orthopedics hire his wife, Dr. Joanne R. Werntz, to fill this position and actively supported her application for employment. The executive committee did not consider Dr. Werntz, but negotiated an employment agreement with another hand surgeon.

On May 21, 1993, the executive committee unanimously voted to expel Dr. Pierson from University Orthopedics. The decision was reaffirmed on July 23, 1993. On July 27, 1993, the executive committee unanimously resolved to effect the dismissal of appellant, purportedly without cause, effective as of November 24, 1993.

On or about September 3, 1993, Dr. Werntz filed a charge of discrimination at the Illinois Department of Human Rights. In her charge, Dr. Werntz alleged that University Orthopedics refused to hire her based upon her sex and marital status. Six weeks later, Dr. Pierson filed his own charge at the Department. In his charge, Dr. Pierson alleged that his dismissal was in retaliation for advocating his spouse's employment and for opposing an illegal "no spouse" policy which prevented Dr. Werntz from being considered or hired by University Orthopedics. Dr. Pierson also pursued a grievance through appropriate internal channels. On November 18, 1993, Dr. Pierson was advised that the termination decision was final and would not be reversed.

Upon learning the termination decision would in fact take effect as of November 27, 1993, Dr. Pierson filed a verified petition for temporary restraining order and preliminary injunction with the circuit court on November 23, 1993. Attached to the petition was a copy of Dr. Pierson's IDHR charge and an affidavit signed by Rose Mary Bombela, Director of the Illinois Department of Human Rights. Bombela's affidavit stated that "an injunction is appropriately issued in this case pursuant to section 5/7A—104 of the [Illinois Human Rights] Act, 775 ILCS 5/7A—104 [(West 1992)]." Section 7A—104 reads, in pertinent part:

> "Judicial Proceedings. (A) Temporary Relief. (1) At any time after a charge is filed, the Department or complainant may petition the appropriate court for temporary relief, pending final determination of the proceedings under this Act, including an order or judgment restraining the respondent from doing or causing any

act which would render ineffectual an order which the commission may enter with respect to the complainant. Whether it is brought by the Department or by the complainant, the petition shall contain a certification by the Director that the particular matter presents exceptional circumstances in which irreparable injury will result from a civil rights violation in the absence of temporary relief.

(2) The petition shall be filed in the circuit court for the county in which the respondent resides or transacts business or in which the alleged violation took place, and the proceedings shall be governed by Part I of Article XI of the 'Code of Civil Procedure,' as amended. Except as provided in subsection (A)(3), the court may grant temporary relief or a temporary restraining order as it deems just and proper." 775 ILCS 5/7A—104(A)(1), (A)(2) (West 1992).

Neither Dr. Pierson's verified petition for certification from the Illinois Department of Human Rights nor any document outlining the Department's findings of fact supporting a claim of "exceptional circumstances" appears in the record.

In its prayer for relief, Dr. Pierson's petition asked the circuit court to (1) grant a temporary restraining order without hearing or formal notice restraining University Orthopedics from terminating his employment on November 27, 1993, (2) convert said temporary restraining order to a preliminary injunction until such time as the Illinois Department of Human Rights rendered a decision on his charge of discrimination, and (3) direct University Orthopedics to pay his costs and attorney fees.

The circuit court conducted a hearing on the petition on November 24, 1993. During this hearing the court did not receive witnesses or otherwise conduct an evidentiary hearing aside from considering affidavits previously filed by the parties. Nor did the court accept as *prima facie* true and correct the statement of IDHR Director Rose Mary Bombela that "an injunction is appropriately issued in this case." The court reasoned that were it to read section 7A—104(A) of the Illinois Human Rights Act as requiring it to issue an injunction based solely upon the certification of the IDHR Director that such relief was appropriate, the statute would violate our constitutional separation of powers. The circuit court then denied the temporary restraining order, stating that Dr. Pierson lacked an ascertainable right, possessed an adequate remedy at law and was not merely an employee but a partner in University Orthopedics.

Following the denial of the temporary restraining order, Dr. Pierson filed a motion for clarification of the ruling. In the request for clarification, Dr. Pierson noted that the court had earlier denied his

petition without a hearing, which action he deemed inappropriate. Shortly thereafter, Dr. Pierson filed a renewed motion for preliminary injunction and for a hearing *instanter* on the preliminary injunction motion.

The court conducted a hearing on Dr. Pierson's various motions on December 17, 1993, at which no evidence was received. The court then issued an order denying Dr. Pierson's motions for clarification, preliminary injunction, and a hearing. The order further dismissed Dr. Pierson's verified petition for temporary restraining order and preliminary injunction with prejudice. Dr. Pierson appealed.

On appeal, the parties present four issues for review: (1) whether an evidentiary hearing was necessary to deny Dr. Pierson's petition for preliminary injunction; (2) whether the circuit court abused its discretion by considering the constitutionality of the statutes pled; (3) whether the circuit court is required to grant injunctive relief under section 7A—104(A) of the Illinois Human Rights Act upon proper certification of the IDHR Director; and (4) whether Dr. Pierson proved the four elements required for the grant of injunctive relief.

■ Preliminarily we address the threshold issue of the circuit court's jurisdiction. The IDHR has original jurisdiction of claims brought under the Illinois Human Rights Act, whereas the circuit court normally only has jurisdiction to review its findings after the charging party has exhausted his or her administrative remedies. 775 ILCS 5/7A—101 *et seq.* (West 1992); 735 ILCS 5/3—101 *et seq.* (West 1992). Section 7A—104 of the Illinois Human Rights Act (775 ILCS 5/7A—104 (West 1992)) provides an exception to this rule where the charging party requires the protection of a temporary restraining order or preliminary injunction—temporary equitable remedies the IDHR is without jurisdiction to grant. Section 7A—104 requires the charging party to petition the IDHR for a certification to the circuit court and show that exceptional circumstances exist requiring such relief. IDHR certification thus gets the charging party into circuit court for the limited purpose of obtaining a temporary restraining order or preliminary injunction before he or she has exhausted his or her administrative remedies. Accordingly, the certification requirement contained in section 7A—104 of the Illinois Human Rights Act is jurisdictional.

■ Once the charging party has obtained IDHR certification, the petition for a temporary restraining order or preliminary injunction must include a copy of the IDHR certification that conforms with section 7A—104(A). The charging party may fulfill this requirement by either reciting the IDHR's findings of fact giving rise to "exceptional circumstances," or attaching the verified petition for IDHR certifica-

tion to the circuit court that outlines said "exceptional circumstances." Absent either of the foregoing, the circuit court cannot be certain the "exceptional circumstances" requirement of section 7A—104(A) was met such that it has subject matter jurisdiction to grant the equitable relief requested.

■ In the instant case, IDHR Director Bombela's affidavit stated only that "an injunction is appropriately issued in this case." No explanation of how or why the IDHR reached that conclusion was made. Accordingly, the affidavit is insufficient on its face to confer jurisdiction upon the circuit court.

Citing *In re Marriage of Grauer*, 133 Ill. App. 3d 1019, 1026, 479 N.E.2d 982, 987 (1985), Dr. Pierson argues that IDHR Director Bombela's failure to recite the IDHR's findings of fact giving rise to "exceptional circumstances" does not render the certification improper because the issues are sufficiently clear to apprise the party challenging the injunction of the IDHR's reasoning. We disagree.

Neither Dr. Pierson's verified petition for certification from the Illinois Department of Human Rights nor any document outlining the Department's findings of fact supporting a claim of "exceptional circumstances" appears in the record. It is the duty of the appellant to present a complete record on appeal so that the reviewing court will be fully informed regarding the issues in the case, and any doubt arising from the incompleteness of the record must be resolved against the appellant. *In re Estate of McGaughey*, 60 Ill. App. 3d 150, 376 N.E.2d 259 (1978). We are bound to presume, therefore, that the circuit court was without subject matter jurisdiction to hear Dr. Pierson's petition.

Even assuming, arguendo, the circuit court had subject matter jurisdiction, a certification issued by the IDHR pursuant to section 7A—104(A) does not automatically entitle Dr. Pierson to a temporary restraining order or preliminary injunction. Under the Illinois Human Rights Act, a circuit court is not required to grant injunctive relief, but "may" grant such relief "as it deems just and proper." 775 ILCS 5/7A—104(A)(2) (West 1992). Moreover, it would be improper to require a trial court to blindly exercise its equitable powers. *People v. Staunton Landfill, Inc.*, 245 Ill. App. 3d 757, 769, 614 N.E.2d 1286, 1293 (1993). Accordingly, plaintiff's argument that the issuance of a certification by the IDHR removes all such discretion from the courts is not well taken. See *Staunton Landfill, Inc.*, 245 Ill. App. 3d at 769, 614 N.E.2d at 1293 (affirming denial of motion for preliminary injunction brought pursuant to section 42(e) of the Illinois Environmental Protection Act (415 ILCS 5/42(e) (West 1994)), which expressly authorizes injunctive relief to enforce its provisions). Thus, even

though the record suggests that University Orthopedics may have violated the Illinois Human Rights Act, the circuit court may properly refuse to grant equitable relief where there is no irreparable injury or where an adequate legal remedy exists. *Staunton Landfill, Inc.*, 245 Ill. App. 3d at 770.

The covenant not to compete in Dr. Pierson's partnership agreement states that upon "retirement or resignation" Dr. Pierson is restricted from conducting any patient care activities at Rush-Presbyterian-St. Luke's Medical Center for three years. Dr. Pierson neither retired nor resigned, but was, according to University Orthopedic's own recitation of the facts, "dismissed." Accordingly, Dr. Pierson cannot claim to have suffered irreparable harm because, by its terms, the covenant not to compete in the partnership agreement did not apply where he did not retire or resign but was forced out involuntarily.

Because we conclude the circuit court was without jurisdiction to enter a temporary restraining order or preliminary injunction and that even if such jurisdiction existed such equitable relief would have been improper based upon the terms of the covenant not to compete, we decline to address the remaining issues raised by the parties on appeal. The order of the circuit court in which the circuit court took jurisdiction and denied Dr. Pierson's request for equitable relief is vacated and the matter remanded to the Illinois Department of Human Rights for further proceedings not inconsistent with this opinion.

Vacated and remanded to the Illinois Department of Human Rights.

CAHILL and THEIS, JJ., concur.