2020 IL App (1st) 191372-U

THIRD DIVISION
September 16, 2020

No. 1-19-1372

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| RANDY EVANS, | ) | Petition for Review of an |
| | ) | Order of the Illinois Human |
| Petitioner-Appellant, | ) | Rights Commission. |
| | ) | |
| v. | ) | Charge No. 2015CF2906 |
| | ) | |
| UNIVERSITY OF ILLINOIS HOSPITAL AND HEALTH | ) | |
| SCIENCES SYSTEMS, ILLINOIS HUMAN RIGHTS | ) | |
| COMMISSION, and ILLINIOIS DEPARTMENT OF | ) | |
| HUMAN RIGHTS, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1   *Held*:   The order of the Illinois Human Rights Commission sustaining the dismissal of petitioner's charge of a violation of the Illinois Human Rights Act is affirmed; petitioner's charges were not supported by substantial evidence petitioner suffered an adverse employment action.

¶ 2   Petitioner, Randy Evans, filed a petition with respondent, the Illinois Human Rights Commission (Commission), for review of an order by respondent, the Illinois Department of Human Rights (Department), dismissing Evans's charges of discrimination against respondent University of Illinois Hospital and Health Sciences Systems ("the Hospital"). Evans alleged the Hospital (1) issued Evans a written disciplinary warning based on his race after he filed a

grievance against the hospital (Charge A), (2) imposed an involuntary transfer of work location on Evans (Charge B), and (3) imposed an involuntary change in work hours on Evans (Charge C). The Department administratively closed Charge A and, after an investigation, dismissed Charge B and Charge C for a lack of substantial evidence. In June 2019 the Commission entered an order sustaining the Department's dismissal of Evans's charge of discrimination against the Hospital.

¶ 3    For the following reasons, we affirm the Commission's order sustaining the Department's order dismissing petitioner's Charge.

¶ 4                                BACKGROUND

¶ 5    On April 29, 2014, pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq*. (West 2014)), Evans perfected a "Charge of Discrimination" (Charge) with the Department against the Hospital. The Charge alleged the discrimination was based on race and that the earliest date of discrimination was February 18, 2014.

¶ 6    The genesis of count A is the claim that Evans had complained to a superior, Baker, that another worker, Nick Zuckerman, had been allowed a shift change and was promoted to Assistant Facilities Manager without following proper procedures. Evans filed a grievance against the hospital in January 2015.

¶ 7    The Charge stated the basis of the charges were "written disciplinary warning, on or about February 18, 2015, because of my race, Black." In support Evans's first claim (Charge A), the Charge lists "*prima facie* allegations" as follows:

> "1.    My race is black.
>
> 2.    I have satisfactorily performed my duties as a Building Service Worker, and have been employed with the [Hospital] since July of 1979.

3.      On or about February 18, 2015, I received a written disciplinary warning from Karen Baker (black), [the Hospital's] Director for Building Services. Baker's document indicates that I was issued the written disciplinary warning for insubordination and insolence; for failure to adhere to [the Hospital's] Code of Conduct policy; for demonstrating disruptive behavior in the workplace, and for poor work performance.

4.      Similarly situated employees, whose races are not black, who have been accused of insubordination and insolence; for failure to adhere to [the Hospital's] Code of Conduct policy; for demonstrating disruptive behavior in the workplace, and for poor work performance, were not issued any written disciplinary warning."

¶ 8      The Hospital filed a response to Charge A. The Hospital's response stated, in pertinent part, that the Hospital "denies that any transfer was because of race, Black. [The Hospital] further states that this Charge is based on the same set of facts as the Charge as was previously investigated and dismissed by the IDHR in 2015CF2906." The Hospital's response asserts the current Charge should be "dismissed as untimely and that it should be dismissed under the principle of *res judicata*."

¶ 9      In the second and third claims ("B" and "C") Evans alleged that the Hospital "involuntarily transferred, on or about February 18, 2015, because of my race, black" (Charge B), and that the Hospital imposed an "involuntary change in work hours [on the same date] because of my race, black" (Charge C). Evans's Charge alleged that on or about February 18, 2015 Clarence Bridges, who is also Black, involuntarily transferred Evans effective March 2, 2015 to work in the Hospital's East Campus and changed Evans's "scheduled work hours from

3:00 p.m. through 11:00 p.m. to 5:00 a.m. through 1:30 p.m." Both claims alleged that similarly situated building services workers, whose races are not Black, "who possess levels of seniority, work performance and experience, and discipline" similar to Evans's have not been involuntarily transferred and/or had their work hours altered in the same manner as Evans's were.

¶ 10    On April 27, 2016 the Department issued an investigation report into Evans's Charge ("the April Report" or "Report"). The April Report states that Charge A for "written disciplinary warning/race, black" was "closed." The April Report found a lack of substantial evidence to support Charge B or Charge C. The April Report found that the Hospital did inform Evans that his work location and shift would change effective March 2, 2015. The April Report also found that on that date Evans "showed up for his new work assignment but was informed that the transfer had been rescinded" and Evans was to report to his original work assignment on his regular shift. The April Report found that Evans did so on March 3, 2015. The Hospital issued Evans a memo to that effect. The April Report also named two non-Black employees who received a shift change notice on June 6, 2014 and who received a reassignment notice on June 23, 2014. The April Report concluded that the Hospital "treated similarly situated non-black Building Services Workers the same as [Evans]" and that Evans's "transfer would have been consistent with [the Hospital's] Collective Bargaining Agreement."

¶ 11    The Department issued a "Notice of Dismissal for Lack of Substantial Evidence" that also informed Evans of the deadline for him to file a request for review before the Commission.

¶ 12    The record contains an August 5, 2016 handwritten document titled "Complainant's Verified Response(s)" ("Verified Response") to the denial of the charge of discrimination filed by Evans. This pleading is filed under Charge Number 2015CF3596 ("the 3596 Charge"). The Verified Response states, as it pertains to this appeal, that on February 18, 2015, the Hospital

- 4 -

involuntarily transferred Evans effective in early March 2015 (the same alleged transfer at issue in this case) in retaliation for filing grievances in January 2015. The Verified Response claims the transfer followed Evans's protected activity of filing a grievance. The Verified Response also states that in May 2015 the Hospital suspended Evans in retaliation for filing a January 2015 grievance. The Verified Response references a May 2015 transfer and a June 2015 suspension allegedly in retaliation for the February 27, 2015 Charge at issue in this case.

¶ 13    Evans filed a Request for Review and on January 24, 2017 the Department filed a "Response to Request for Review" (Response). The Department's Response stated that Charge A "was administratively closed by the Department." The Department's Response also stated, in pertinent part, that the Department's investigation file reflected "an uninvestigated claim of retaliation." According to the Response, Evans complained about another worker "being allowed to change his shift and to be an Assistant Facilities Manager, without following proper procedures." The Department's Response recommended that the Commission vacate the dismissal of Charge B and Charge C and remand Charge B and Charge C to the Department's Charge Processing Division "so the Department can resolve the *** uninvestigated retaliation claim." As to Charge B and Charge C, the Response argued (1) Evans failed to meet his *prima facie* case since there was no substantial evidence to support that he was subjected to an adverse action, (2) the investigation did not reveal evidence of discriminatory animus or of another employee, not in [Evans's] protected class, who was treated more favorably under similar circumstances, and (3) there was no evidence that [the Hospital's] stated reason for its decision to transfer [Evans,] to meet operational needs, was pretext for discrimination.

¶ 14    The Report lists as "uncontested facts" that:

"2.     On February 18, 2015, Clarence Bridges (black), Executive Director

issued [Evans] a memo indicating that effective Monday, March 2, 2015,

[Evans] was being reassigned to the East Campus. It indicated that his

new shift would be Monday through Friday, 5:00 a.m. through 1:30 p.m.

3.     On March 2, 2015 [the Hospital] informed [Evans] that the department

had reversed its decision; [Evans] would not be relocated to a different

work assignment. The message also informed [Evans] that his shift would

also remain the same as before."

¶ 15    The Report found no evidence that on February 18, 2014 the Hospital involuntarily transferred Evans because of his race. The Report concludes "evidence revealed that on March 2, 2015, [the Hospital] informed [Evans] that the department had reversed its decision; and [Evans] would not be relocated to a different work assignment. [Evans] was also informed that his shift would also remain the same as before." The Report does not state what specific evidence it relied upon for this conclusion. The Report goes on to state that Evans "concedes that the transfer and shift change was rescinded on March 2, 2014." Finally, the Report states that the evidence revealed that two non-Black employees in Evans's department "were subjected to a shift change and reassignment on June 6, 2014 and June 23, 2014" and that the Department's investigation "did not reveal that [Evans] identified any other employee who was not transferred under similar circumstances." The Report concluded that if there was a transfer it "would have been consistent with [Evans's] Collective Bargaining Agreement. The Report concluded the evidence showed and Evans conceded he was not transferred and that there was no evidence of an animus based on race. The Report also states that the evidence revealed that on March 2, 2015, the Hospital informed Evans his shift would remain the same as before. According to the

- 6 -

Report, Evans conceded that on March 2, 2014, the shift change was rescinded. The Report also states that the evidence revealed that two non-Black employees in Evans's department were subjected to a shift change on June 6 and June 23, 2014.

¶ 16    The Report recommended a finding of a lack of substantial evidence because the evidence showed that although the Hospital issued Evans a memo indicating he would be transferred and that his work hours would change, this was consistent with Evans's Collective Bargaining Agreement, and because the evidence showed and Evans conceded his hours were not changed. Moreover, because the investigation revealed that the Hospital treated similarly situated non-Black employees the same as Evans, and those other employees were subjected to a shift change and reassignment.

¶ 17    Despite the lack of identification of specific evidence to support each specific statement in the Department's report, the Report collectively lists one of Evans's witnesses as a witness and lists as exhibits to the Report the February 18, 2015 reassignment memo and the March 2, 2015 memo. None of the exhibits are included in the record on appeal.

¶ 18    On February 27, 2017, the Commission entered an order vacating the dismissal of Evans's Charge and reinstating and remanding the matter to the Department for further investigation. This order resulted from the Department's own request, after the Department determined that Evans made a charge of retaliation that had not been investigated.

¶ 19    On March 14, 2017, the Department dismissed Charge B and Charge C. On June 1, 2017, Evans filed a "Request for Review" of the dismissal of the Charge by the Department. After further investigation, on March 9, 2017, the Department issued an addendum to its investigation report (hereinafter, collectively, "the Report"). The Report again found that Evans's Charge A had been closed and that Charge B and Charge C were not supported by

substantial evidence. The Report stated Evans alleges he was subjected to an involuntary transfer and change in work hours in retaliation for engaging in a protected activity. The Report stated that in a letter dated February 27, 2015, Evans "was informed that retaliation was not included in the charge because he had not engaged in a protected activity." The Report stated Evans initialed the letter. The February 27, 2015 letter is listed as an exhibit to the Report but the exhibits are not included in the record on appeal.

¶ 20    On November 1, 2017, the Department filed another Response to Request to Review the subsequent dismissal of Charge B and Charge C ("Second Response"). The Second Response stated the Department conducted further investigation of Evans's uninvestigated "claim for retaliation which appeared in the Complainant Information Sheet ('CIS') which was not previously investigated by the Department."[1] The Second Response stated that after further investigation the Department "determined that the issue of retaliation that appears in the CIS was addressed by the Department prior to the Department's May 4, 2016 Dismissal of [Charge] B and [Charge] C of the [C]harge for Lack of Substantial Evidence." The Second Response notes that the second investigation report resulted from the vacatur of the dismissal and reinstatement of the Charge. The Report contains a "Staff Note" by the Department's investigator that reads:

---

[1]    Although not a part of the record on appeal, Evans attached a copy of the CIS to his brief. The CIS contains a section that asks, if the complainant claims retaliation as a basis for the charge of discrimination, to state how the complainant "opposed unlawful discrimination." Evans wrote as follows:

"I recently (approx. November/December 2014) requested a meeting with Ms. Karen Baker, Director, and her representatives to discuss a situation involving [another employee] and how [the other employee] was allowed to be a Assistant Facilities Manager without follow (*sic*) proper procedures and allowed also to change his shift without a number of problems."

"In the [CIS] and in his questionnaire, [Evans] alleges that he was subjected to an involuntary transfer and change in work hours in retaliation for engaging in a protected activity. The issue of retaliation was addressed by the Department's Intake Unit in a letter dated February 27, 2015. [Evans] was informed that retaliation was not included in the charge because he had not engaged in a protected activity. [Evans] initialed the intake letter."

¶ 21 According to the Second Response the February 27, 2015 letter states: "Retaliation was not included because the act of complaining about Zukerman is not a protected activity under the Human Rights Act." The Second Response goes on to state: "The letter advised [Evans] to submit a written appeal within ten days of receipt of the letter or the Department will assume that [Evans] agrees with the information and will investigate only the issues indicated on the charge. The letter bears [Evans's] initials reflecting his agreement with the letter. [Evans] did not submit a written appeal to the Department." The Second Response stated its prior recommendation to vacate its dismissal of Charge B and Charge C and to remand for further investigation was made in error. The Second Response stated that in his subsequent Request for Review Evans "failed to present any additional arguments that provide a reason to overturn the Department's findings." The Department argued it properly dismissed Charge B and Charge C and asked the Commission to sustain the dismissal of Charge B and Charge C of the Charge for Lack of Substantial Evidence.

¶ 22 On June 4, 2019, the Commission issued an order sustaining the dismissal of Evans's Charge. The order found Evans filed a charge of discrimination alleging the Hospital issued him a written warning (Charge A), involuntarily transferred him to another work location (Charge B), and involuntarily changed his work hours (Charge C) due to his race in violation of the Act.

Regarding Charge A the order found that upon further investigation the Department determined that Evans had been informed his allegations of retaliation were not included in the current Charge because Evans had not engaged in any protected activity. The Department informed Evans he had ten days to appeal that decision but he failed to do so. Thus, Charge A was closed and the Department proceeded to investigate Evans's charges based solely on racial discrimination. The order further concluded that the Department properly dismissed Charge B and Charge C for lack of substantial evidence. The order found Evans had "not provided any evidence that he was subjected to an adverse action." The order found that the Department's investigation "revealed that before [Evans] was required to report to the new location, the [Hospital] informed him that he was not being transferred." The order concluded "[i]t is undisputed that there was never a change in [Evans's] work location or hours, and therefore the [Hospital] never subjected [Evans] to an adverse action." The order held Evans failed to present any evidence the Department's dismissal of the Charge failed to comply with the Act and, accordingly, sustained the dismissal of Evans's Charge.

¶ 23    This appeal followed.

¶ 24                                     ANALYSIS

¶ 25    Claims of discrimination based on race and claims of retaliation against a person for engaging in a protected activity may be brought under the Act. 775 ILCS 5/1-102(A) (West 2014), *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). The claim is initiated by filing a Charge with the Department. 775 ILCS 5/7A-102(A)(1) (West 2014). When a person files a discrimination charge the Department conducts an initial investigation to determine "whether the allegations set forth in the charge are supported by substantial evidence" (775 ILCS 5/7A-102(C)(1) (West 2014)), which is defined as "evidence

which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance (775 ILCS 5/7A-102(D)(2) (West 2014), and prepares a report to the Director of the Department (775 ILCS 5/7A-102(D)(1) (West 2014)). The Director then determines whether there is substantial evidence that the alleged civil rights violation has been committed. 775 ILCS 5/7A-102(D)(2) (West 2014). "If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court." 775 ILCS 5/7A-102(D)(3) (West 2014).

¶ 26    In this case, the Director determined there was no substantial evidence the alleged civil rights violations occurred and Evans sought review by the Commission. 775 ILCS 5/7A-102(D)(3) (West 2014). Where, as here, "a request for review is properly filed, the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request." 775 ILCS 5/8-103(B) (West 2014). The Commission may sustain the Department's dismissal of a Charge. 775 ILCS 5/8-103(A) (West 2014), see also *Pence v. Illinois Human Rights Commission*, 2020 IL App (3d) 190384, ¶ 27. "The Commission's determination to sustain the dismissal is not a quasi-judicial decision. The Department's dismissal and the Commission's subsequent review of that decision are essentially prosecutorial, *i.e.* whether there is sufficient evidence to prosecute the charge. [Citations.]" *Pence*, 2020 IL App (3d) 190384, ¶ 27. "[T]he Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional

investigation conducted by the Department in response to the request." 775 ILCS 5/8-103(B) (West 2014).

¶ 27    We review the Commission's order dismissing a Charge for an abuse of discretion. See *Young*, 2012 IL App (1st) 112204, ¶ 32.

> "Under the abuse of discretion standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious. [Citation.] A decision is arbitrary or capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise. [Citation.] Under this standard, the court may not reweigh the evidence or substitute its judgment for that of the Commission. [Citation.] Abuse of discretion will be found where no reasonable man could agree with the position of the lower court. [Citation.]" *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 28    In this case Evans alleged, *inter alia*, discrimination based on his race. "To establish a *prima facie* case of employment discrimination, the employee must first show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated others similarly situated outside the class more favorably. [Citation.]" *Id.* ¶ 34. Evans's appeal also implicates a charge of retaliation. The Commission sustained the dismissal of Evans's charge of discrimination based on race because it found there was a lack of substantial evidence Evans suffered an adverse employment action where the memo he received changing his work location and shift was rescinded before Evans had to change work location or shift. On appeal, Evans argues he "provided substantial evidence that he was subjected to an adverse action" and the

Department's investigation "was not thorough and resulted in [the Department] arriving at improper conclusion, according to [Evans.]"

¶ 29   First, we note the Charge in the record includes a charge (Charge A) that Evans received a written disciplinary warning on or about February 18, 2015, because of his race.  The Department found this charge was administratively closed by the Department and the Commission's order similarly states "Count A was administratively closed."  The Charge alleges similarly situated non-Black employees accused of similar conduct as Evans "were not issued any written disciplinary warning."  Based on our review of the record, this charge is separate from the uninvestigated retaliation charge, which we discuss below.[2]  The uninvestigated allegation in the CIS was that the Hospital allowed another employee to become an Assistant Facilities Manager without following proper procedures and that this other employee was allowed to change his shift without "a number of problems."  Regardless, as the Department has pointed out on appeal, "[w]hen the Department becomes aware that there is a charge filed containing some or all of the issues pending in a federal or State court proceeding, it may administratively close the issues of the charge that are being litigated and continue to process the remaining issues.  The Department shall advise the parties in writing, allowing 15 days for either party to state in writing why those issues of the charge should not be closed."  56 Ill. Admin. Code § 2520.550.  There is nothing in the record to indicate Evans stated in writing why Charge A in the Charge at issue in this case should not have been closed.  The Department argues "Count A" is procedurally forfeited because Evans did not object to its administrative closure by

---

[2]      The Department's addendum to its investigation report stated that "[i]n the [CIS] and in his questionnaire, [Evans] alleges that he was subjected to an involuntary transfer and change in work hours in retaliation for engaging in a protected activity."

the Department.  We must agree.  "It is well established that issues not raised during an administrative proceeding are waived and will not be considered for the first time on appeal. [Citation.]"  (Internal quotation marks omitted.)  *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 493 (1996).

¶ 30     Next, regarding Evans's charge of discrimination based on race, the Commission did not abuse its discretion in finding a lack of substantial evidence Evans suffered an adverse employment action in the form of a change in work location and shift.  Regarding Charge B and Charge C, Evans points to no evidence that despite the Department's conclusion that the decision to transfer Evans was rescinded, he was, in fact, subjected to an involuntary change in work location and hours.  Both the Department and the Commission concluded Evans did not contest the fact of the recission of the employment decision resulting in forfeiture of any argument on appeal that it was not rescinded.  *Raintree Health Care Center*, 173 Ill. 2d at 493.

¶ 31     Further, in evaluating charges of discriminatory practices brought under the Act Illinois courts apply the three-part test employed by the federal courts in actions for employment discrimination brought under title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967.  *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 918 (2010).  "Under this three-prong test, the petitioner must first establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination."  *Id.* at 918-19.  To establish the *prima facie* case the complainant must produce evidence sufficient to show the impermissible factor was at least a "motivating factor" for the adverse employment decision. *Good v. CPI Corp.*, 2012 WL 4183214, *7, citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).  "Throughout the proceedings, the ultimate burden of persuasion is on the employee." *Young*, 2012 IL App (1st) 112204, ¶ 36, *Budzileni v. Department of Human Rights*, 392 Ill. App.

3d 422, 444 (2009). Because Evans has cited no evidence either that the (1) the employment action occurred or that (2) his race was a motivating factor in the Hospital taking that adverse action, Evans has failed to establish a *prima facie* case of unlawful discrimination. "Since [Evans] did not establish a *prima facie* case of discrimination, the Commission's dismissal of [his] claim was not an abuse of discretion." *Motley v. Illinois Human Rights Commission*, 263 Ill. App. 3d 367, 373 (1994).

¶ 32     If this court were to construe the fact Evans showed up for his new work assignment but was told he did not have to make the change, that *de minimis* impact would not establish a *prima facie* case of discrimination.

> "To show *** that she suffered an adverse employment action, an employee must establish that the employment action was 'materially adverse' and not a 'mere inconvenience or an alteration of job responsibilities.' [Citations.] A materially adverse employment action is 'one that significantly alters the terms and conditions of the employee's job' or causes a material change in the employment relationship. [Citations.] To be actionable, there must be a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits.' [Citation.]" *Young*, 2012 IL App (1st) 112204, ¶ 35.

Evans does not argue nor could we find from the circumstances a significant alteration of the terms and conditions of his job from reporting to a different shift and being sent home one time. The action, even accepting it did occur as Evans states, did not result in a hiring, firing, or failure to promote; nor did it result in any different responsibilities or change in Evans's benefits.

*Young*, 2012 IL App (1st) 112204, ¶ 35. The Commission's order is not arbitrary or capricious. The order finding a lack of substantial evidence as to Charge B for discrimination based on race by reassignment to a different work location and Charge C for discrimination based on race by a change in work hours is, therefore, affirmed.

¶ 33    Evans now takes the position that the effort to change his shift and work hours, as well as the written reprimand (which has been forfeited), were acts of retaliation for his speaking out about management treatment of other employees. "[T]o establish a *prima facie* case of retaliation under the Human Rights Act, petitioner must show that: (1) she was engaged in a protected activity; (2) her employer committed a material adverse act against her; and (3) a causal nexus existed between the protected activity and the adverse act." *Hoffelt*, 367 Ill. App. 3d at 634. Evans argues the record contains letters to the Hospital complaining about his supervisors' conduct and shortly thereafter he received the notice of his change in work location and shift. Evans argues he "hopes this will illustrate to the court the causal connection between [Evans's] letter to the administration dated February 10, 2015 and the February 18, 2015, notices (2) [Evans] received on February 18, 2015." Evans argues that based on the foregoing the evidence "will prove *** management took adverse actions(s) against [him] for engaging in protected activities."

¶ 34    Evans also argues the Department erroneously determined he was told he had ten days to appeal the decision that his retaliation claim would not be included with the Charge and that he did not file an appeal. In support of that position Evans argues that he checked a box on the CIS indicating that he had previously filed a Charge against the Hospital but the Department did not "follow through *** and closed the case without first contacting [Evans] by phone and mail to discuss the matter." Evans separately argues the Department is "incorrect when it states [Evans]

was not removed because of race, that [Evans] was not transferred ***, that [the Hospital] did not change [Evans's] work shift, that [the Hospital] did not change [Evans's] off-days, and that [the Hospital] did not change [Evans's] work location." Evans does not claim his work location or hours were actually changed; instead, Evans argues the Hospital's actions (inferentially in sending him the notice of a change in work location and shift) "had an adverse effect because of management['s] *** opposition to [Evans's] protected activities by advocating on behalf of other employees and reporting to administration the alleged actions, that [Evans] perceived or observed, were negative/harmful to the workers of various departments at the University of Illinois Hospital and clinics."

¶ 35    Although the Commission's order does not make an express finding as to Evans's retaliation claim, the order states, as did the Department's report, that Evans was informed he had ten days to file an appeal of the decision that his allegations of retaliation would not be included in the Charge because he had not engaged in any protected activity. Although Evans disputes that finding on appeal, he only argues the Department should have conducted a more thorough investigation because he previously filed a Charge against the Hospital. (As noted above the CIS is not part of the record on appeal but Evans attached a copy to his brief. The checkbox asking if Evans had previously filed an appeal goes on to ask when and Evans wrote that he had filed the previous Charge on the same day as the Charge that is the subject of the CIS. This fact however does not change our analysis or the outcome.) We note the Department relied on a letter that Evans allegedly initialed acknowledging the decision not to include the retaliation charge but that letter is not included in the record on appeal. Evans had the burden to provide a sufficient record to permit this court to decide this issue in his favor. See *Watkins v. Office of State Appellate Defender*, 2012 IL App (1st) 111756, ¶ 30. We must presume the

Department and the Commission had a sufficient factual basis for their factual findings. *Id.*, see also *Pierson v. University Orthopedics, S.C.*, 282 Ill. App. 3d 339, 344 (1996) ("It is the duty of the appellant to present a complete record on appeal so that the reviewing court will be fully informed regarding the issues in the case, and any doubt arising from the incompleteness of the records must be resolved against the appellant."). We note Evans could have supplemented the information before the Commission when it reviewed the Department's report. 775 ILCS 5/8-103(B) (West 2014) ("When a request for review is properly filed, the Commission may consider the Department's report, any argument *and supplemental evidence timely submitted*, and the results of any additional investigation conducted by the Department in response to the request." (Emphasis added.)).

¶ 36 Also, proceedings before the Commission are governed by the Administrative Review Law. *Rackow v. Illinois Human Rights Comm'n*, 152 Ill. App. 3d 1046, 1060-61 (1987) ("According to section 8-111(A) of the Illinois Human Rights Act, review of a decision of the Human Rights Commission must be in accordance with the Administrative Review Law ([citations]'). Section 3-110 of the Administrative Review Law provides that the findings and conclusions of an administrative agency on questions of fact are to be held *prima facie* true and correct."). Under the Administrative Review Law,

> "Every action to review any final administrative decision shall be heard and
> determined by the court with all convenient speed. The hearing and
> determination shall extend to all questions of law and fact presented by the entire
> record before the court. No new or additional evidence in support of or in
> opposition to any finding, order, determination or decision of the administrative
> agency shall be heard by the court. The findings and conclusions of the

administrative agency on questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2018).

¶ 37 Moreover, "the appropriate standard of review is whether the chief legal counsel abused her discretion in sustaining the Department's dismissal of a civil rights violation. [Citation.] The reviewing court cannot reweigh the evidence." *Folbert v. Dep't of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). "The agency's findings of fact are entitled to deference." *Id.* "[O]ur review is limited to deciding whether the chief legal counsel's decision dismissing the claim for lack of substantial evidence is "arbitrary and capricious or an abuse of discretion." *Id.*

¶ 38 We accept the Commission's determination Evans's retaliation claim was administratively closed, and that Evans did not appeal that decision, as *prima facie* true and correct. Not only could we not reweigh the evidence in that regard, there is none in the record. Accordingly, we hold the Commission did not abuse its discretion with regard to Evans's claim of retaliation for protected activity.

¶ 39 We also find the "protected activity" listed in the CIS, should we have been able to consider it, is not "protected activity" under the Act. "The plaintiff is required to make a threshold showing that the constitutionally protected activity was a motivating factor in the adverse decision." *Temple v. Board of Education of School District No. 94, Cook County*, 192 Ill. App. 3d 182, 187 (1989). "To succeed on a claim of retaliation, a plaintiff must show that she engaged in a statutorily protected activity." *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 65.

"It is a civil rights violation for a person, or for two or more persons to conspire, to:

(A) Retaliation. Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act." 775 ILCS 5/6-101(A) (West 2014).

"Protected activity includes internal complaints to managers or other appropriate persons. [Citation.] However, the substance of the complaint must be sufficient to put the employer on notice that the plaintiff reasonably believes that prohibited discrimination has occurred. Although no particular 'magic words' are required ([citation]), 'the complaint must indicate [that] discrimination occurred because of sex, race, national origin, or some other protected class. [Citations.] Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Lau*, 2019 IL App (2d) 180456, ¶ 67.

¶ 40     We have already found that Evans failed to establish he suffered an adverse employment action. Thus, any implicit claim he suffered said employment action in retaliation for a protected activity must fail and the Commission did not abuse its discretion in sustaining the dismissal. See generally *C.R.M. v. Chief Legal Counsel of Illinois Department of Human Rights*, 372 Ill. App. 3d 730, 733 (2007). The only basis known to us for the *uninvestigated* retaliation claim is

Evans's request for a meeting to discuss another employee's promotion and change in shift. We would not, should we have been able to consider it, find such a request to be a "protected activity" for purposes of a claim of retaliation and would find Evans failed to establish a *prima facie* case on that basis.

¶ 41    Finally, Evans argues the Department did not conduct a thorough investigation of the Charge, specifically including the failure to follow up on the check box on the CIS that indicated that Evans had previously filed a Charge against the Hospital, and, he argues,

> "let's ask the court to consider what if that evidence was tampered with, misplaced, destroyed, ignored, withheld, lost, watered down or disappears due to no role or part play by [Evans,] whether old evidence of recent/new evidence? How would a reasonable mind, based on the evidence/proof and depending on what is defined or considered evidence by the court(s) and [the parties] final conclusion when [the Department] does not have the evidence and before that, conduct a(n) (*sic*) thorough and balanced/forensic investigation of the evidence and talk to the questioned witnesses on both sides ***?  This, [Evans] reasons, should or must be considered by the court.  *** [Evans] ask the court carefully, to look at the evidence and reach a fair decision based on the or a preponderance of the evidence that the legitimate reasons offered by [the Hospital] were not its true reasons, but were a pretext for retaliation, harassment, disparate treatment discrimination, bias, and again, uneven/unfair treatment on the part of [the Hospital.]"

¶ 42    Evans is asking this court to reweigh the evidence and urges a different outcome. However, under the applicable standard of review, this court "may not reweigh the evidence or

substitute its judgment for that of the Commission." *Young*, 2012 IL App (1st) 112204, ¶ 33.

Additionally, "mere speculation and conjecture does not constitute substantial evidence."

*Folbert*, 303 Ill. App. 3d at 25. We decline Evans's invitation to "look carefully at the evidence"

and reach a different result. The evidence does not support a contrary decision and, regardless,

the question for this court is whether the Commission abused its discretion. We hold it did not.

The order does not contravene legislative intent, fail to consider a critical aspect of the matter (at

least none pointed out by Evans), or offer an implausible explanation for its decision. See

*Young*, 2012 IL App (1st) 112204, ¶ 33. Accordingly, the Commission's order is affirmed.

¶ 43                                   CONCLUSION

¶ 44     For the foregoing reasons, the Commission's order is affirmed.

¶ 45     Affirmed.